UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,<br><br>Plaintiffs,<br><br>v.<br><br>VOLVO CAR CORPORATION, VOLVO CARS OF NORTH AMERICA, LLC, and VOLVO CAR USA LLC,<br><br>Defendants. | C.A. No. 6:23-cv-00429-ADA<br><br>█████████████ |

**DEFENDANTS' MOTION TO DISMISS FOR IMPROPER SERVICE AND IMPROPER VENUE**

# **TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. FACTUAL BACKGROUND.........................................................................................1

III. ARGUMENT..................................................................................................................4

    A. Venue in this District is Improper for VCNA and VCUSA. ..............................4

        1. Venue is Improper Because Neither VCNA Nor VCUSA Resides in the
Western District of Texas. ........................................................................5

        2. Venue is Improper Because VCNA and VCUSA Do Not Have Regular and
Established Places of Business in the Western District of Texas. ................5

        3. VCNA and VCUSA Request Transfer to New Jersey.................................10

    B. Improper Service................................................................................................10

        1. Plaintiffs' Service Contravenes Texas State Law. ........................................11

        2. Plaintiffs did not Deliver Process to an Officer, a Managing or General Agent,
or Any Authorized Agent of VC.................................................................11

        3. Transfer to New Jersey is Appropriate if Service is Proper.........................12

IV. CONCLUSION.............................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ambraco, Inc. v. Bossclip B.V.*,
   570 F.3d 233 (5th Cir. 2009) ................................................................................................5

*Andra Group, LP v. Victoria's Secret Stores, L.L.C.*,
   6 F.4th 1283 (Fed. Cir. 2021) ................................................................................................8

*Andrade v. Chojnacki*,
   934 F. Supp. 817 (S.D. Tex. 1996) ......................................................................................12

*Attwell v. LaSalle National Bank*,
   607 F.2d 1157 (5th Cir. 1979) ..............................................................................................10

*Carimi v. Royal Caribbean Cruise Line, Inc.*,
   959 F.2d 1344 (5th Cir. 1992) ..............................................................................................10

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) .............................................................................................5

*Fundamental Innovation Systems International, LLC v. ZTE Corp.*,
   2018 WL 3330022 (N.D. Tex. Mar. 16, 2018) ....................................................................12

*Galderma Laboratories, L.P. v. Teva Pharmaceuticals USA, Inc.*,
   290 F. Supp. 3d 599 (N.D. Tex. 2017) ................................................................................12

*In re Google LLC*,
   949 F.3d 1338 (Fed. Cir. 2020) .........................................................................................5, 6

*StratosAudio, Inc. v. Hyundai Motor America*,
   2022 WL 770119 (W.D. Tex. Mar. 10, 2022) ......................................................................4

*StratosAudio, Inc. v. Subaru America*,
   2022 WL 3702270 (W.D. Tex. Aug. 26, 2022) ....................................................................4

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   581 U.S. 258 (2017) ...........................................................................................................4, 5

*In re Volkswagen Group of America, Inc.*,
   28 F.4th 1203 (Fed. Cir. 2022) ..................................................................................... passim

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) .............................................................................................4

**Statutes**

28 U.S.C. § 1400(b) ................................................................................................................4

28 U.S.C. § 1404(a) ..............................................................................................................12

28 U.S.C. § 1406(a) ..........................................................................................................1, 10

Tex. Bus. Orgs. Code § 5.201 ..............................................................................................11

Tex. Bus. Orgs. Code § 5.255 ..............................................................................................11

Tex. Occ. Code Ann. § 2301.003 ...........................................................................................8

Tex. Occ. Code Ann. § 2301.476 ...........................................................................................8

**Other Authorities**

Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1101 (4th ed.) ............................................11

Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3827 (4th ed.) ...................................12–13

Fed. R. Civ. P. 4(e)(1) ..........................................................................................................10

Fed. R. Civ. P. 4(h)(1)(A) ....................................................................................................10

Tex. Fed. R. Civ. P. 106(a)(1) ..............................................................................................11

Tex. Fed. R. Civ. P. 106(a)(2) ..............................................................................................11

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Defendants Volvo Car North America, LLC ("VCNA") and Volvo Car USA LLC ("VCUSA") respectfully move to dismiss Plaintiffs' Complaint because venue is improper over both companies and, pursuant to Federal Rule of Civil Procedure 12(b)(5), Defendant Volvo Car Corporation ("VC") moves to dismiss Plaintiffs' Complaint because VC was not properly served in this case. Because venue is improper as to VCNA and VCUSA, and this case cannot proceed here against either company, pursuant to 28 U.S.C. § 1406(a) the case should be transferred to the District of New Jersey. VC requests that the claims against it be dismissed for improper service, and in the alternative transferred to the District of New Jersey in the event the Court determines service was proper.

## I.   INTRODUCTION

Neither VCNA nor VCUSA have a regular and established place of business in the Western District of Texas. Plaintiffs' attempts to argue otherwise based on the presence of non-agent car dealerships here have been deemed legally insufficient by both the Federal Circuit and this Court. This case is no different, and it cannot proceed in this District.

In addition, Plaintiffs' service on a registered agent of U.S.-based VCNA and VCUSA cannot legally effect service on VC, a separate legal entity based in Sweden. On this basis, too, the case cannot proceed.

Because this case cannot move forward against VCNA or VCUSA in the Western District of Texas, it is most efficient for it to be transferred to the District of New Jersey, where the case can proceed against all Defendants.

## II.   FACTUAL BACKGROUND

VC is a Swedish corporation with its headquarters and principal place of business in Gothenburg, Sweden. (Compl. ¶ 5.) It has no registered service agent in Texas.

VCNA and VCUSA are Delaware corporations with their principal places of business in Mahwah, New Jersey. (Ex. A, Moorhead Dec. ¶ 4.) VCNA is a non-operating holding company. (*Id.* ¶ 5.) VCUSA imports and wholesales new Volvo vehicles, parts, and accessories into the United States. (*Id.* ¶ 6.) ███████████████████████████████████████████████████████████████████████████████████████████████████ VCUSA sells vehicles and parts to over 275 independently owned and operated U.S. dealerships, four of which are located in this District. (*Id.* ¶ 12.) VCUSA's relationships with ██████ ████████████████████ governed by a Retailer Agreement, which is attached as Exhibit 1 to the Moorhead Declaration filed with this Motion. (*Id.* ¶ 13.) Its relationship with ███████ ████████████████████████████████████████████ which is attached as Exhibit 2 to the same declaration. (*See id.*)

VCNA and VCUSA do not own, lease, manage, control, or maintain any physical place of business within the Western District. (*Id.* ¶ 7.) Nor do they design, develop manufacture, import, offer to sell, or sell vehicles or parts in this District to customers, at dealerships or otherwise. (*Id.* ¶ 9.) Likewise, neither provides warranty, maintenance, or recall services for Volvo vehicles and components at dealerships in the Western District. (*Id.*)

Care by Volvo ("CbV") is a lease program that allows customers to obtain a new Volvo vehicle for an all-inclusive monthly fee. In Texas, that fee covers (among other things) insurance, some assurance coverages, roadside assistance, and maintenance. (Ex. B, Axelrod Dec. ¶ 7.) ███ ████████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

Today, using the CbV website, customers can place a reservation for a CbV vehicle at a participating dealership. (*Id.* ¶ 9.) This reservation is not a binding purchase; customers or dealers

may cancel reservations at any time before taking delivery of the vehicle. (*Id.*) Reservations on the CbV site also do not constitute an agreement to lease the vehicle to a customer. (*Id.* ¶ 11.) But beginning in March 2022 and continuing up until and through the filing of this Complaint on June 8, 2023, customers were unable to place reservations for vehicles or view available models through the CbV website. (*Id.* ¶ 10.)

Only after a customer is deemed creditworthy, is found eligible for insurance, and their reservation is finalized, can they consummate the transaction by executing a CbV Lease with a dealer—an agreement to which VCNA and VCUSA are not parties. (*Id.* ¶¶ 11–12.) As is the case for other Volvo vehicle leases, customers do not direct their monthly CbV lease payments to VCNA or VCUSA. (*Id.* ¶ 12.)



As of June 8, 2023, the four Western District dealers participated in the CbV program. (*Id.* ¶ 7.)

Compl. ¶¶ 20, 23, 24.)

### III. ARGUMENT

#### A. Venue in this District is Improper for VCNA and VCUSA.

Venue is improper in the Western District for VCNA and VCUSA. Neither resides here, and on nearly identical facts, the Federal Circuit rejected claims that independent dealerships

represented the regular and established places of business of car manufacturers. *See In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203 (Fed. Cir. 2022).[1] Following that decision, this Court dismissed patent infringement claims against the accused car manufacturers for improper venue, where, as here, "[a]ll of Plaintiff's arguments hinge on the dealerships." *StratosAudio, Inc. v. Hyundai Motor Am.*, 2022 WL 770119, at *2 (W.D. Tex. Mar. 10, 2022) (Albright, J.); *see* Compl. ¶ 42. This case is no different. Plaintiffs' Complaint does not (and cannot) show any proper basis for venue in the Western District of Texas. The claims should be dismissed.

Venue is proper in a patent infringement action only where the defendant (1) resides; or (2) "has committed acts of infringement" and has a "regular and established place of business." 28 U.S.C. § 1400(b); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (explaining that § 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions"). Plaintiffs "bear[] the burden of establishing proper venue," *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018), keeping in mind the Supreme Court's "repeated[] caution[] against a broad reading of the patent venue statute," *In re Volkswagen*, 28 F.4th at 1208 (citing *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961); *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942)). When assessing venue, the Court may look beyond the complaint to evidence submitted by the parties. *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

---

[1] VCUSA was also a party to the litigation in the Western District of Texas that the *Volkswagen* decision stemmed from. After *Volkswagen*, VCUSA's motion to dismiss for improper venue was denied as untimely and therefore waived, not on the merits. *See StratosAudio, Inc. v. Subaru Am.*, 2022 WL 3702270 (W.D. Tex. Aug. 26, 2022).

1. **Venue is Improper Because Neither VCNA Nor VCUSA Resides in the Western District of Texas.**

A defendant resides only in its state of incorporation. *TC Heartland*, 581 U.S. at 268. VCNA and VCUSA are both incorporated in Delaware, meaning that neither resides in this District. Residency, therefore, cannot be a proper basis for venue in this action.

2. **Venue is Improper Because VCNA and VCUSA Do Not Have Regular and Established Places of Business in the Western District of Texas.**

Likewise, VCNA and VCUSA do not currently have, nor did they have as of the Complaint's filing, a regular and established place of business in the Western District.[2] To avoid dismissal, Plaintiffs' Complaint must show: (1) a physical place; (2) that is a regular and established place of business; and (3) that is the place of the Defendants. *In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017).[3]

As was the case in *Volkswagen*, in assessing the second prong, the "dispute [here] boils down to three issues: (1) whether the dealerships are the agents of [VCNA and VCUSA]; (2) whether the dealerships conduct [VCNA and VCUSA's business]; and (3) whether [VCNA and VCUSA] have ratified the dealerships as [their] places of business." 28 F.4th at 1208. Dismissal is appropriate where only <u>one</u> of these three requirements is missing, *see id.* (quoting *Cray*, 871 F.3d at 1360), and while the answer to each of these questions is emphatically no, Plaintiffs' claims

---

[2] Plaintiffs falsely claim that "VCUSA has previously admitted [] it 'has a regular and established place of business in this District,'" citing an answer filed in a separate patent infringement case. Compl. ¶ 44 (citing *MicroPairing Techs. LLC v. Volvo Car USA LLC*, Case No. 6:21-cv-01108-ADA, Dkt. 8 at ¶ 4). In reality, that limited admission related to personal jurisdiction, which VCUSA left uncontested "for the purposes of [that] action." *MicroPairing*, Dkt. 8 at ¶ 4 (emphasis added). But when addressing venue, it denied having "three permanent, physical, regular and established places of business in the Western District." *Id.* at ¶ 7.

[3] The second factor requires "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (Google II).

against VCNA and VCUSA should be dismissed because the dealers are not agents of either Defendant.

### i.   The dealers are not agents of VCNA or VCUSA.

Critically, to find an agency relationship, VCNA and VCUSA must have the "'right to direct or control' the [dealers'] actions." *Google II*, 949 F.3d at 1345 (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)). Contractual provisions "that merely provide constraints on" or set standards governing "how a service is provided" are not sufficient to give rise to an agency relationship. *Volkswagen*, 28 F.4th at 1209. Plaintiffs must prove that VCNA and VCUSA exercise "the requisite [degree of interim] control over the dealerships with respect to th[e] activities" underlying the alleged agency relationship. *Id.* at 1210.

Plaintiffs' Complaint fails to plead facts that warrant a different conclusion than the one reached by the Federal Circuit, and ultimately this Court, in *Volkswagen*. Plaintiffs' venue allegations based on warranties, maintenance, service, sales of new vehicles and parts, marketing and branding, dealership appearance, and training have all been addressed and deemed legally insufficient to establish an agency relationship—the *Volkswagen* court denied venue where the manufacturers' "contractual provisions generally require[d] the dealerships to":

> (1) employ certain types of employees, such as a general manager, and service and sales staff; (2) maintain a minimum amount of inventory; (3) perform warranty work on consumer vehicles; (4) use specified tools when performing warranty and maintenance work; (5) use distributor-approved computer hardware and software; (6) comply with the distributors' standards regarding dealership appearance and use of signs and brand logos; (7) comply with the distributors' working capital requirements; and (8) attend mandatory training sessions [] or require staff to have certain training certifications [].

*Id.* at 1211. Additional "provisions requiring dealerships to use [manufacturer]-approved stationery and business forms," and "to keep brochures on hand and display them," along with

6

provisions granting manufacturers the "conditional ability to terminate the agreements" did "not alter [the court's] analysis." *Id.* at 1211 & n.5.

Put simply, VCUSA is in the business of importing and wholesaling new Volvo vehicles, parts, and accessories, and like the manufacturers in *Volkswagen*, its "business is to sell cars to dealerships, not consumers." *Id.* at 1210 n.4. These allegations, therefore, do not demonstrate or "give [VCNA or VCUSA] 'interim control' over [] the dealerships' car sales or warranty work." *Id.* at 1211.

The few general allegations in the Complaint that were not expressly addressed by *Volkswagen* concern (1) "listing each of" the dealerships "on Volvo's website," "offering for sale on Volvo's website(s) the infringing automobiles and components at the physical, geographical locations of these authorized [] dealers," and (2) "providing [] dealers sales promotions," "financing for dealership improvements," and "sharing customer data[.]" (Compl. ¶¶ 29, 30, 36.) Neither of these allegations are sufficient to establish venue in this District.

First, listing dealerships and their locations on a Volvo website would not make those dealerships agents of VCNA or VCUSA. This argument was also made in the plaintiffs' complaint in *Volkswagen*, but it was not found to be sufficient to confer proper venue in that case. *See StratosAudio, Inc. v. Hyundai Motor Am.*, Case No. 6:20-cv-01125-ADA, Compl., Dkt. 1, ¶ 12. Moreover, Plaintiffs' allegation that Volvo's websites offer the accused automobiles and components for sale is demonstrably incorrect. (*See* Moorhead Dec. ¶ 15.) VCNA and VCUSA do not sell or offer *any* vehicles or components—let alone the accused ones—on Volvo websites. (*Id.*) Even if they did, the Federal Circuit has rejected arguments that those facts were sufficient to confer an agency relationship. *See Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1288 (Fed. Cir. 2021) (emphasis added) (internal quotations omitted) (rejecting agency where

7

plaintiffs alleged defendant "closely control[led] the distribution and sales of its products exclusively available through store locations *and the website*").

Second, funding dealership improvements is indistinguishable from the mandatory compliance with appearance standards noted and rejected above by the *Volkswagen* court, and this allegation was similarly not found to be sufficient to confer venue in *Volkswagen* where the plaintiffs claimed that Hyundai "offer[ed] 'floor plan' loans directly to [] authorized dealers." See *StratosAudio, Inc. v. Hyundai Motor Am.*, Case No. 6:20-cv-01125-ADA, Compl., Dkt. 1, ¶ 14. Likewise, merely providing sales promotions to dealers and sharing customer data with them falls short of "'step-by-step' instructions from [manufacturers] that dealerships must follow when selling a car" or the "full control over [] day-to-day operations" necessary to establish venue here. *Volkswagen*, 28 F.4th at 1212.

Plaintiffs attempt to escape *Volkswagen* by relying on Volvo's "Care by Volvo" program ("CbV").[4] (Compl. ¶ 20.) However, nothing in ███████████████████████████████████████████████████████████████████████████[5]██████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[4] Plaintiffs' venue allegations cite extensively to an administrative report from a Department of Motor Vehicles investigation in California. (Compl. ¶¶ 13–19.) That report, from a California consumer protection agency, is not a legal finding from a judge and should not impact this Court's decision, nor does it have any preclusive effect.

[5] Interpreting the addendum in a manner contrary to its plain text, as Plaintiffs suggest, would also contravene Texas law, which forbids "a manufacturer or distributor" from "operat[ing] or control[ling]" a "franchised dealer or dealership." Tex. Occ. Code Ann. § 2301.476(c)(2)(A). Such an agreement would be unenforceable. *Id.* § 2301.003(b).

████████████████████████████████ The "interactions that are within the scope of [the] agency relationship" are the "only" ones that can "affect the principal's legal position." *Volkswagen*, 28 F.4th at 1210 (quoting Restatement (Third) of Agency § 1.01(c)).

Beyond the face of the agreement, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Axelrod Dec. ¶¶ 8, 12.) At most, they play a limited role in running the CbV website, which offers customers the ability to make reservations for a CbV subscription at a participating dealership. (*Id.* ¶ 9.) But as stated previously, a customer's reservation is not a binding purchase, and it can be cancelled by the customer or the dealer at any time before they take delivery of the vehicle. (*Id.*) And notably, at the time the Complaint was filed, customers could not use the CbV website to place vehicle reservations at all. (*Id.* ¶ 10.)

Furthermore, these reservations do not lease the CbV vehicle to a customer. (*Id.* ¶ 11.) A customer must be deemed creditworthy, found eligible for insurance, and execute a CbV lease—████████████████████████████████████████—to finalize a CbV transaction. (*Id.* ¶¶ 11–12.) And as is the case with other Volvo leases, VCNA and VCUSA are not parties to the CbV lease agreement, and customers do not direct their monthly CbV lease payments to VCNA or VCUSA. (*Id.* ¶ 12.) The CbV process is akin to a travel website sending a potential customer to an airline or hotel to book travel—that referral would not be sufficient to make the airline or hotel an agent of the travel website.

For these reasons, venue is improper and the suit against VCNA and VCUSA cannot proceed in this District.

### 3. VCNA and VCUSA Request Transfer to New Jersey.

28 U.S.C. § 1406(a) provides that the Court has discretion, "in the interest of justice," to transfer the case to "any district or division in which it could have been brought." On this basis, Defendants respectfully request that it be transferred to New Jersey, where both VCNA and VCUSA maintain their principal places of business, as venue is indisputably proper based on their regular and established places of business.

### B. Improper Service

Dismissal is likewise warranted for VC. It has no registered agent in Texas, and service on VCNA and VCUSA's registered agent was improper to effect service on VC. "It is axiomatic that in order for" this Court to exercise jurisdiction over VC "there must be valid service of process." *Attwell v. LaSalle Nat'l Bank*, 607 F.2d 1157, 1159 (5th Cir. 1979). When "the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

Federal Rule of Civil Procedure 4(h) supplies the relevant standard for assessing the validity of service on a corporation. It provides that service "in a judicial district of the United States" is proper if: (A) it follows "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; or (B) "by delivering" process to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" on behalf of the corporation. Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1).

Plaintiffs cannot establish that they properly served VC under either standard, requiring dismissal of the claims against VC.

        **1.**        **Plaintiffs' Service Contravenes Texas State Law.**

The Texas Rules of Civil Procedure outline two permissible methods of service—(1) "delivering [process] to the defendant, in person"; or (2) "mailing [process] to the defendant. . . ." Tex. Fed. R. Civ. P. 106(a)(1), (2). Service on a legal-entity defendant is accomplished by serving an individual, prescribed by statute, as having authority to accept service. *See* Tex. Bus. Orgs. Code §§ 5.201, 5.255 (service of process on corporation may be made on corporation's president, vice-president, or registered agent).

Plaintiffs followed neither method here. The Affidavit of Service Plaintiffs filed with the Court attests that the Summons and Complaint were served on George Martinez, an "authorized acceptance agent employed by Registered Agent CT Corporation System, Inc., who is authorized to accept service of process for Volco [sic] Car Corporation, c/o Volvo Cars of North America, LLC and Volvo Car USA, LLC, at the address of 1999 Bryan Street, Suite 900, Dallas, Dallas County, TX 75201. . . ." Pls.' Aff. Service, ECF No. 15.

Contrary to Plaintiffs' representations to the Court, that individual is not authorized to accept service of process for VC. Critically, VC has no authorized agent for service in the state of Texas. Had Plaintiffs exercised reasonable diligence to search the records of the Texas Secretary of State, they would have come to the same conclusion. Plaintiffs also do not contend that they attempted to mail process to VC. Their attempted service, therefore, was improper under Texas state law.

        **2.**        **Plaintiffs did not Deliver Process to an Officer, a Managing or General Agent, or Any Authorized Agent of VC.**

Federal Rule of Civil Procedure 4(h)(1)(B), the operative rule here, "contemplates service on agents either expressly or impliedly appointed by the defendant organization as agents to receive process." Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1101 (4th ed.). As stated

previously, Plaintiffs allege that they served an agent "authorized to accept service of process for Volco [sic] Car Corporation, c/o Volvo Cars of North America, LLC and Volvo Car USA, LLC." Pls.' Aff. Service, ECF No. 15. That statement is false.

VCNA and VCUSA's Texas-based service agent is not expressly authorized to accept service of process for VC. And service on registered agents for VCNA and VCUSA, which are separate and distinct corporate entities, does not effect service on VC. *See Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, 2018 WL 3330022, at *2 (N.D. Tex. Mar. 16, 2018) (dismissing patent infringement claims because service on a foreign corporation's wholly-owned domestic subsidiary failed to effect service). Plaintiffs have not alleged that VCNA and VCUSA are impliedly authorized to receive process for VC. Likewise, they have provided no other reason for the Court to conclude that VCNA or VCUSA are the alter egos of VC, such that service on VCNA or VCUSA would effect service on VC. For these reasons, the Court should dismiss the claims against VC for improper service.

### 3. Transfer to New Jersey is Appropriate if Service is Proper.

VC asks that this Court dismiss the claims against it outright. But in the unlikely event Plaintiffs' service of VC is found to be proper, and the claims against VCNA and VCUSA are transferred to the District of New Jersey, VC respectfully requests that the Court also transfer the claims against it to the District of New Jersey in the interests of judicial efficiency. *See Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 614 (N.D. Tex. 2017) ("To avoid duplicative litigation, the Court could transfer the remaining claims under 28 U.S.C. § 1404(a) . . . ."); *Andrade v. Chojnacki*, 934 F. Supp. 817, 830 n.28 (S.D. Tex. 1996) ("Because venue is improper in this district for the majority of Plaintiffs' claims, and because these complex cases should be managed and tried as a group, the more prudent and judicially efficient course is to

transfer the entire lawsuit . . . ."); Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3827 (4th ed.) ("If venue is proper for some defendants but improper for others, the district court . . . may transfer the entire case to another forum that would be proper for all the defendants.").

## IV. CONCLUSION

For the foregoing reasons, VCNA and VCUSA ask this Court to transfer the case to the District of New Jersey. VC requests that the claims against it be dismissed because it was improperly served.

Dated: September 22, 2023

*/s/ B. Todd Patterson*
B. Todd Patterson
Texas Bar No. 00789537
Kyrie K. Cameron
Texas Bar No. 24097450
PATTERSON + SHERIDAN, LLP
24 Greenway Plaza, Suite 1600
Houston, TX 77046
Phone: (713) 623-4844
Fax: (713) 623-4846
tpatterson@pattersonsheridan.com
kcameron@pattersonsheridan.com

Benjamin J. Bradford (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
Telephone: 312-222-9350
Facsimile: 312-527-0484
bbradford@jenner.com

Haley B. Tuchman (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Telephone: 202-639-5351
Facsimile: 202-639-6066
htuchman@jenner.com

*Attorneys for Defendants Volvo Car Corporation, Volvo Car North America, LLC, and Volvo Car USA LLC*

## CERTIFICATE OF SERVICE

I certify that on September 22, 2023, the foregoing was filed electronically in compliance with Local Rule CV-5 and served via the Court's electronic filing system on all counsel who have appeared in this case.

/s/ B. Todd Patterson
B. Todd Patterson